UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SCOTT BRADLEY
STEVENS,

                  Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY
ADMINISTRATION,

                  Defendant.

_____/

Case No. 2:20-cv-11074
District Judge Nancy G. Edmunds
Magistrate Judge Anthony P. Patti

**<u>MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO DENY
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF No. 13),
GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF
No. 16) and AFFIRM THE COMMISSIONER'S DECISION</u>**

**I.**    **RECOMMENDATION**:  For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (ECF No. 13), **GRANT** Defendant's motion for summary judgment

(ECF No. 16), and **AFFIRM** the Commissioner's decision.

**II.**    **REPORT**

       Plaintiff, Scott Bradley Stevens, brings this action under 42 U.S.C. § 405(g)

for review of a final decision of the Commissioner of Social Security

(Commissioner) denying his application for Disability Insurance Benefits (DIB).

This matter is before the United States Magistrate Judge for a Report and

Recommendation on Plaintiff's motion for summary judgment (ECF No. 13), the

Commissioner's cross-motion for summary judgment (ECF No. 16), Plaintiff's

reply (ECF No. 17), and the administrative record (ECF No. 11).

## A. Background and Administrative History

Plaintiff alleges his disability began on December 15, 2015, at which point

he would have been 52 years old. (ECF No. 11, PageID.222-223.) He filed an

application for DIB on February 15, 2017. (*Id*.)[1] In his disability report he lists

asthma, severe chronic bronchitis, COPD, gout, arthritis severe—bilateral knees

and right ankle, high blood pressure, and obesity as limiting his ability to work.

(*Id*., PageID.265.) Plaintiff's application was denied on April 26, 2017. (*Id*.,

PageID.142.)

Plaintiff requested a hearing by an Administrative Law Judge (ALJ). (*Id*.,

PageID.164-165.) On January 3, 2019, ALJ Brian Burgtorf held a hearing, at

which Plaintiff and a vocational expert (VE), Mark Richards, testified. (*Id*.,

PageID.81-113.) On March 4, 2019, ALJ Burgtorf issued an opinion, which

determined that Plaintiff was not disabled within the meaning of the Social

Security Act. (*Id*., PageID.61-75.) For purposes of Plaintiff's DIB claim, the ALJ

found December 31, 2017 to be his date last insured. (*Id.*, PageID.67.)

---

[1] The record indicates that Plaintiff filed a prior DIB claim on November 15, 2013, which was ultimately denied. (ECF No. 11, PageID.66-67, 117-132.)

Plaintiff submitted a request for review of the hearing decision/order.  (*Id.*, PageID.216-221.)  However, on March 5, 2020, the Appeals Council denied Plaintiff's request for review.  (*Id.*, PageID.53-58.)  Thus, ALJ Burgtorf's decision became the Commissioner's final decision.

Plaintiff timely commenced the instant action on May 1, 2020.  (ECF No. 1.)

### B.    Plaintiff's Medical History

The administrative record contains approximately 182 pages of medical records, which were available to the ALJ at the time of his March 4, 2019 decision. (ECF No. 11, PageID.309-491 [Exhibits B1F-B9F].)  These materials will be discussed in detail, as necessary, below.

### C.    The Administrative Decision

Pursuant to 20 C.F.R. § 404.1520(a)(4), at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period from his alleged onset date of December 15, 2015 through his date last insured of December 31, 2017.  (*Id.*, PageID.67.)  At **Step 2**, the ALJ found that Plaintiff had the following severe impairments: asthma, chronic obstructive pulmonary disease, obesity, osteoarthritis left knee, and anxiety.  (*Id.*)  At **Step 3**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  (*Id.*, PageID.68-70.)  **Between Steps 3 and 4** of the

sequential process, the ALJ evaluated Plaintiff's residual functional capacity

(RFC)[2] and determined that Plaintiff had the RFC

> to perform light work . . . except [Plaintiff] can stand and/or walk for four hours in an eight-hour workday, and for every 30 minutes of sitting, standing, or walking, [Plaintiff] will need to change positions and will be off-task no more than 10% of the workday. [Plaintiff] can never climb ladders, ropes, and scaffolds. [Plaintiff] can occasionally climb ramps and stairs. [Plaintiff] can frequently balance and stoop. [Plaintiff] can occasionally kneel, crouch, and crawl. [Plaintiff] can never be exposed to extreme cold, extreme heat, humidity, or pulmonary irritants, such as dust, odors, fumes, and gasses. [Plaintiff] can never work around hazards, such as unprotected heights or unguarded or unprotected moving mechanical parts. [Plaintiff] cannot work at a production rate pace, such as on an assembly line.

(*Id.*, PageID.70; *see also* PageID.71-73.) At **Step 4**, the ALJ determined that

Plaintiff was unable to perform past relevant work as a driver and garbage

collector. (*Id.*, PageID.73.) At **Step 5**, the ALJ determined, based on VE

Richards' testimony, that there were jobs that existed in significant numbers in the

national economy that Plaintiff could have performed, namely "Router," "Marker,"

and "Mail clerk." (*Id.*, PageID.73-74.) The ALJ therefore concluded that Plaintiff

had not been under a disability, as defined in the Social Security Act, at any time

from December 15, 2015, the alleged onset date, through December 31, 2017, the

date last insured. (*Id.*, PageID.74.)

---

[2] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

**D.    Standard of Review**

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "[s]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from

[the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### E.    Analysis

Plaintiff brings only one contention before the Court: that "[t]he ALJ's physical RFC is not supported by substantial evidence because he failed to properly weigh the opinion of treating physical therapist Alok Saraiya, PT." (ECF No. 13, PageID.508; ECF No. 17, PageID.541-544.) Plaintiff is not disputing that the ALJ *generally* had "substantial evidence" to support his RFC determination. Plaintiff instead grounds this appeal on the principle that "failure to follow agency rules and regulations 'denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.'" *Cole v. Astrue*,

6

661 F.3d 931, 937 (6th Cir. 2011) (quoting *Blakley* 581 F.3d at 407).  Specifically, Plaintiff argues that the ALJ failed to adequately consider PT Saraiya's opinions. (ECF No. 13, PageID.508.)

The Commissioner opposes Plaintiff's motion, asserting that substantial evidence supports the RFC assessment, and that the ALJ did not err in evaluating PT Saraiya's opinions.  (ECF No. 16, PageID.530-531, 534-540.)  For the reasons that follow, I agree with the Commissioner.

### 1.   PT Saraiya's treatment history and opinions

PT Saraiya treated Plaintiff as a physical therapist 75 times between 2014 and 2016.  (ECF No. 11, PageID.375.)  On October 4, 2014, prior to Plaintiff's alleged onset date, PT Saraiya completed a Residual Functional Capacity Questionnaire in which he opined that: Plaintiff's condition may improve but never reach full function level; Plaintiff could sit for 45 minutes/stand or walk for 10 minutes at a time, and sit for 4 hours/stand or walk for 2 hours in an 8-hour workday; and Plaintiff would need to take unscheduled work breaks often throughout the workday, among other limitations.  (ECF No. 11, PageID.364-366.)

On January 3, 2016, PT Saraiya completed an additional Residual Functional Capacity form, opining that: Plaintiff's disability or impairment had lasted more than one year, prevented him from standing for 6 to 8 hours, and required that he lie down during the day; Plaintiff could lift and carry less than 5

7

pounds; and Plaintiff could not return to previous work.  (ECF No. 11,

PageID.367-374.)

### 2.    The ALJ gave PT Saraiya's opinions "no weight"

The ALJ gave PT Saraiya's opinions "no weight," stating:

> The claimant's physical therapist opined in January 2016, that the
> claimant could stand for eight to ten minutes; that the claimant could
> sit if he was able to changes [sic] positions and had little to no activity
> level; that the claimant needed to lie down during the day; that the
> claimant had limitations on walking; that the claimant had postural
> and manipulative limitations; and that the claimant could lift and carry
> less than five pounds.  He also opined that the claimant could not
> continue or resume employment (Exhibit B5F).  The undersigned
> gives this opinion no weight.  This opinion was not provided by an
> acceptable medical source.  Further, the degree of limitation opined is
> not consistent with or supported by the medical evidence of record, as
> discussed above (Exhibit B3F/8; B3F/4/12/15/18/20/23/26/40; B5F;
> B6F/8/16/19/25/29).

> The claimant's physical therapist opined in October 2014, that the
> claimant had limitations on sitting, standing, and walking, and
> limitation[s] on how much he could lift and carry.  He opined that the
> claimant would need to take unscheduled breaks during the day, and
> that he would be absent from work three or four times per month
> (Exhibit B4F).  The undersigned gives this opinion no weight, as it
> was proffered prior to the alleged onset date and, as such, has little
> impact on the current evaluation of disability.  Furthermore, this
> opinion was not provided by an acceptable medical source.
> Therefore, no weight is given.

(ECF No. 11, PageID.72-73.)

### 3.    Applicable rules and regulations

It is important to clarify at the outset which Social Security regulations

applied to the ALJ's consideration of PT Saraiya's opinion, and which did not.  For

8

DIB claims filed prior to March 27, 2017, like that at issue here, 20 C.F.R. §

404.1527 and Social Security Regulation (SSR) 06-03p apply.  Although the

Commissioner suggests that SSR 06-03p is inapplicable because "[t]he

Commissioner . . . rescinded SSR 06-03p as of March 27, 2017, . . . prior to the

issuance of the ALJ's decision here" (ECF No. 16, PageID.538 n. 1 (internal

citation omitted)), that argument lacks merit.  The Commissioner rescinded SSR

06-03p because it had become "inconsistent with the [new] rules" which had

"revised [the policies SSR 06-03p comments on] for claims filed on or after March

27, 2017, in several ways."  82 FR 15263-01 (Mar. 27, 2017).  Thus, the

dispositive question is not whether SSR 06-03p had been rescinded at the time of

the ALJ's opinion, but whether Plaintiff's claim is subject to the pre-March 27,

2017 rules (which SSR 06-03p comments on) or the post-March 27, 2017 rules

(which SSR 06-03p conflicts with).  Plaintiff filed his original application for DIB

on February 15, 2017 (ECF No. 11, PageID.224-229), which means that he is

proceeding under the pre-March 27, 2017 rules.  (*See* ECF No. 13, PageID.512

n.1.)

### 4.    The ALJ's consideration of PT Saraiya's opinion comported with applicable rules and regulations

Plaintiff claims that, in "fail[ing] to even consider PT Saraiya's medical

opinion[,]" the ALJ contravened 20 C.F.R. § 404.1527(c)'s promise that

"[r]egardless of its source, we will evaluate *every* medical opinion we receive."

(ECF No. 13, PageID.513.) Further, Plaintiff asserts that SSR 06-03p "require[d]" (ECF No. 13, PageID.512) the ALJ to evaluate PT Saraiya's opinion across various factors listed in SSR 06-03p, namely:

> [h]ow long the source has known and how frequently the source has seen the individual; [h]ow consistent the opinion is with other evidence; [t]he degree to which the source presents relevant evidence to support an opinion; [h]ow well the source explains the opinion; [w]hether the source has a specialty or area of expertise related to the individual's impairment(s); and [a]ny other factors that tend to support or refute the opinion.

2006 WL 2329939, at *4-5.

While 20 C.F.R. § 404.1527 applies to the evaluation of opinion evidence for DIB claims filed before March 27, 2017, like that at issue here, PT Saraiya's opinion is not governed by 20 C.F.R. § 404.1527(c), as Plaintiff asserts. This is so because 20 C.F.R. § 404.1527(c) provides guidance on "[h]ow we weigh *medical opinions*" (emphasis added). "Medical opinions are statements from *acceptable medical sources* that reflect judgments about the nature and severity of your impairment(s) . . . ." 20 C.F.R. § 404.1527(a)(1) (emphasis added). At the time that Plaintiff filed his claim, a physical therapist was not an "acceptable medical source," 20 C.F.R. § 404.1513(a), (d),[3] so the opinion of PT Saraiya was not entitled to any particular weight or deference. *See Noto v. Comm'r of Soc. Sec.*,

---

[3] Former 20 C.F.R. § 404.1513 was in effect until March 27, 2017. *See* 20 C.F.R. § 404.1513(a). Thus, it applies to Plaintiff's claim filed on February 15, 2017.

632 F. App'x 243, 248-49 (6th Cir. 2015); 20 C.F.R. § 404.1527(f) (applying to claims filed before March 27, 2017).

Instead, 20 C.F.R. § 404.1527(f) controlled the ALJ's evaluation of PT Saraiya's opinion.  Section 404.1527(f)(1) states that an ALJ "will consider [opinions from non-acceptable medical sources] using the same factors as listed in paragraph (c)(1) through (c)(6) in this section," said "factors" in subsection (c) basically paralleling those listed in SSR 06-03p.  *Compare* C.F.R. § 404.1527(c)(1)-(6) *with* 2006 WL 2329939, at *4-5.  But 20 C.F.R. § 404.1527(f)(1) goes on to state that "not every factor for weighing opinion evidence will apply in every case because the evaluation of an opinion from a medical source who is not an acceptable medical source . . . depends on the particular facts in each case."

The foregoing discussion of C.F.R. § 404.1527(f)(1) dealt with an ALJ's "Consideration" of a non-acceptable medical source's opinion; C.F.R. § 404.1527(f)*(2)* sets standards for an ALJ's "Articulation" of his or her decision whether to assign weight to a non-acceptable medical source's opinion.  "The adjudicator generally should explain the weight given to opinions from [non-acceptable medical sources] or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning . . . ."  C.F.R. § 404.1527(f)(2).  This undemanding

language has led this Court to conclude that "[s]o long as the ALJ addresses the opinion of a [person captured by C.F.R. § 404.1527(f)] and gives reasons for crediting or not crediting the opinion, the ALJ has complied with the regulations." *Drain v. Comm'r of Soc. Sec.*, No. 14-cv-12036, 2015 WL 4603038, at *4 (E.D. Mich. July 30, 2015) (Ludington, D.J.).  In a similar situation governed by C.F.R. § 404.1527(f), the Undersigned has likewise observed that "the ALJ . . . was merely required to consider [the opinion] and provide a sufficient explanation to allow a subsequent reviewer to follow her reasoning."  *Mata v. Comm'r of Soc. Sec.*, No. 2:18-CV-12102, 2019 WL 4127192, at *7 (E.D. Mich. Aug. 14, 2019) (Patti, M.J.), *report and recommendation adopted by* No. 18-12102, 2019 WL 4077593 (E.D. Mich. Aug. 29, 2019) (Lawson, D.J.).

    In the instant case, the ALJ complied with C.F.R. § 404.1527(f)'s mandates. The ALJ's discussion and reprinting of PT Saraiya's opinions demonstrates that the ALJ "considered" PT Saraiya's opinions.  The ALJ also provided reasons for assigning no weight to PT Saraiya's opinions, sufficient to allow this reviewer to follow his reasoning.  As to PT Saraiya's January 2016 opinion, the ALJ stated that it was "not consistent with or supported by the medical evidence of record . . . ." (ECF No. 11, PageID.72 (internal citation omitted).)  The ALJ then cited specific portions of the record he found to be inconsistent with PT Saraiya's opinion, referencing earlier portions of his decision.  (*Id.*)  *See Athey v. Comm'r of Soc.*

12

*Sec.*, No. 13-cv-12528, 2014 WL 4537317, at *4 (E.D. Mich. Sept. 11, 2014)

(reasoning that it is appropriate to read an ALJ's decision as a whole); *Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004).  As to PT Saraiya's October 2014 opinion, the ALJ noted that "it was proffered prior to the alleged onset date and, as such, has little impact on the current evaluation of disability."  (ECF No. 11, PageID.73.)

Plaintiff attempts to argue that PT Saraiya's opinions *were* consistent with the record, pointing to numerous places in the record where PT Saraiya's opinions accorded either with his own notes (ECF No. 13, PageID.514-515) or the findings of other medical professionals (*id.*, PageID.515-517).  But contrary to Plaintiff's protests (*id.*, PageID.518), upending the ALJ's determination on these grounds would constitute an impermissible re-weighing of the evidence.  This is especially true given that "[t]he opinion of a 'non-acceptable medical source' is not entitled to any particular weight or deference—the ALJ has discretion to assign it any weight he feels appropriate based on the evidence of record."  *Noto,* 632 F. App'x at 248-49; *see also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530 (6th Cir. 1997) ("[U]nder the current regulations, the ALJ has the discretion to determine the appropriate weight to accord a [non-acceptable medical source's] opinion based on all evidence in the record . . . .").

Moreover, substantial evidence supports the ALJ's inconsistency conclusion. Indeed, as the Commissioner points out (ECF No. 16, PageID.535-537), the ALJ cited to the record extensively in outlining his reasoning.  By way of example, in discussing Plaintiff's asthma and chronic obstructive pulmonary disease in relation to Plaintiff's RFC, the ALJ acknowledged "periods of less optimal findings" (ECF No. 11, PageID.71 (citing ECF No. 11, PageID.343, 401, 404)), but also identified examinations showing "no intercostal retractions or use of accessory muscles; normal oxygen saturation levels; that [Plaintiff's] lungs were clear to auscultation bilaterally; and no rales, rhonchi, or wheezes" (*id.*, PageID.71, (citing PageID.321, 329, 335, 337, 340, 391, 394, 400)).  With respect to Plaintiff's osteoarthritis, the ALJ identified examinations showing "a normal gait and station and normal range of motion" (*id.*, PageID.71 (citing PageID.324, 337, 343, 401) as well as occasions on which the Plaintiff "actively denied symptoms during the relevant period, including joint pain; difficulty walking; and instability" (*id.*, PageID.71 (citing PageID.323, 336, 341, 356, 393).  Ultimately, the ALJ assigned "great weight" to the State agency consultants' RFC recommendation, which adopted the RFC assessed in regard to Plaintiff's prior claim.  (*Id.*, PageID.72.)  ALJ Burgtorf's deviations from the consultants' recommendation went in *Plaintiff's favor*: ALJ Burgtorf added to his RFC determination that "[Plaintiff] cannot work at a production rate pace[,]" and further remarked that "the medical evidence of record

14

available for the relevant period supports a greater limitation on standing and/or walking than opined by the prior [ALJ]." (*Id.*, PageID.70, 72; *compare id.*, PageID.70 ¶ 5, *with id.*, PageID.139 "RFC – Additional Explanation.")

This would be a much different analysis if the Court were reviewing the ALJ's decision whether to afford controlling weight to a medical opinion from *an acceptable medical source* under 20 C.F.R. § 404.1527(a)(1) and (c)(2), applicable to claims filed before March 27, 2017, like Plaintiff's. In *that* context, the ALJ would have been compelled to "give good reasons" for why the treating source's opinion was weighted in a particular way. 20 C.F.R. § 404.1527(c)(2). Some of the case law cited by Plaintiff is inapplicable to the instant case precisely because it is lifted from this more probing, "good reasons" inquiry. For example, Plaintiff cites *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013) (*see* ECF No. 13, PageID.513-514), wherein the Court addressed an ALJ's failure to consider treatment notes from a therapist that corroborated a treating physician's opinion. In addition to being a "good reasons" situation, *Gayheart* involved an ALJ who failed to "discuss or even acknowledge" the therapist's corroborative notes; the ALJ in the instant case discussed the evidence consistent with PT Saraiya's opinion, even if he did not necessarily emphasize it. *Id.* at 378; (*see* ECF No. 11, PageID.64-75.)

15

Plaintiff also cites *Fritz v. Colvin*, No. 2:14-cv-1911, 2016 WL 491829 (S.D. Ohio Feb. 9, 2016) for the proposition that "[a]n ALJ's statement favoring or rejecting an opinion by simply citing consistency with the totality of the record is too vague to permit review." (ECF No. 17, PageID.542.) But an inquiry into whether "good reasons" were provided will necessarily require more detail than an inquiry into whether mere reasons were provided; besides, the ALJ in the instant case—apparently unlike the ALJ in *Fritz*—cited to specific portions of the record in asserting that PT Saraiya's opinion was inconsistent with the record. (*See* ECF No. 11, PageID.72.)

Other authorities cited by Plaintiff are ill-suited to a 20 C.F.R. § 404.1527(f) analysis because they center on improper treatments of *evidence that had already been credited*. Plaintiff relies upon *Craft v. Comm'r of Soc. Sec.*, No. 1:12-CV-487, 2012 WL 6812537 (N.D. Ohio Dec. 17, 2012), *report and recommendation adopted by* No. 1:12 CV 487, 2013 WL 103078 (N.D. Ohio, Jan. 7, 2013) (citing *Young v. Comm'r of Soc. Sec.*, 351 F.Supp.2d 644 (E.D. Mich. 2004)), for his assertion that an ALJ may not "'pick and choose the portions of a single report, relying on some and ignoring others, without offering some rationale for his decision.'" (ECF No. 13, PageID.517-518.)[4]  In *Craft*, 2012 WL 6812537, at *5,

_____

[4] In *Young*, 351 F.Supp.2d at 652, an ALJ faced conflicting information from the *Dictionary of Occupational Titles* and a vocational expert's testimony, yet failed "to elicit information to resolve the conflict." Plaintiff also cites *Williams v.*

16

an ALJ "gave 'significant weight' to [a doctor's] opinion and… fail[ed] to explain why he disregarded portions of the doctor's findings." However, Plaintiff's cited sources simply demonstrate that—once an ALJ gives weight to opinions—the ALJ must sufficiently explain how those opinions are utilized and how any conflicts between the opinions are resolved. But, as discussed above, when an ALJ is deciding *whether to weigh a non-acceptable medical source's opinion at all*, the ALJ need only consider the opinion and gives reasons for whether the opinion is to be credited.

Finally, Plaintiff's arguments regarding the application of SSR 06-03p lack merit. Though Plaintiff insists (ECF No. 13, PageID.512; ECF No. 17, PageID.542) that SSR 06-03p "requires" an ALJ to consider an enumerated list of factors when evaluating a non-acceptable medical source's opinion, SSR 06-03p in fact states that "these . . . factors *can* be applied to opinion evidence from [non-acceptable medical sources]." 2006 WL 2329939, at *4 (emphasis added). SSR 06-03p then adds that "[n]ot every factor for weighing opinion evidence will apply in every case. The evaluation of an opinion from a medical source who is not an 'acceptable medical source' depends on the particular facts in each case." *Id.* at

---

*Comm'r of Soc. Sec.*, No. 12-15156, 2014 WL 988911 (E.D. Mich. Mar. 13, 2014), for its general finding that an ALJ failed to explain her reasoning in sufficient detail. (ECF No. 13, PageID.518.) In *Williams*, an ALJ gave weight to variously conflicting opinions, but failed to "expressly and fully resolve… material inconsistences." *Williams*, 2014 WL 988911, at *5, 14.

*5.  This noncommittal language has led federal courts in both of Michigan's federal districts to conclude that "'SSR 06–[0]3p is phrased in permissive rather than mandatory terms[.]'"  *Bernard v. Comm'r of Soc. Sec.*, No. 11-12951, 2012 WL 3639054, at *12 (E.D. Mich. July 25, 2012), *report and recommendation adopted by* No. 11-12951, 2012 WL 3646937 (E.D. Mich. Aug. 23, 2012) (quoting *Vanportfliet v. Comm'r of Soc. Sec.*, No. 1:10-cv-578, 2012 WL 1345315, at *15 (W.D. Mich. Mar. 26, 2012), *report and recommendation adopted by* No. 1:10-cv-578, 2012 WL 1345305 (W.D. Mich. Apr. 18, 2012)).  The *Bernard* Court noted that "the ALJ expressly mentioned the opinions, [and then] stated that they were not consistent with the record" and thus found "that these express statements coupled with the ALJ's analysis is sufficient to comply with SSR 06–03p." 2012 WL 3639054, at *12.  The ALJ in the instant case has done the same, and—given that SSR 06-03p's liberal phrasing seems to impose no mandatory obligations beyond those articulated in 20 C.F.R. § 404.1527(f)—has thus satisfied "agency rules and regulations."

## F.    Conclusion

Plaintiff has the burden of proof on statements of error.  *Walters*, 127 F.3d at 529 ("[D]uring the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five.").  Plaintiff has not shown legal error that would upend the ALJ's decision.  For the foregoing reasons, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (ECF No. 13), **GRANT** Defendant's motion for summary judgment (ECF No. 16), and **AFFIRM** the Commissioner of Social Security's decision.

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR

72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated:  August 17, 2021

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE